UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY WATTS,<br><br>                    Plaintiff,<br><br>        v.<br><br>TIM VIRGA, et al.,<br><br>                    Defendants. | No.  2:10-cv-2688 TLN CKD P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on the Second Amended Complaint filed October 15, 2012, in which plaintiff alleges that officials at California State Prison-Sacramento ("CSP-Sacramento") violated the Eighth Amendment in 2010 by transferring him to a cold-climate prison against doctor's orders.  (ECF No. 32 ("SAC").)  Before the court is defendants' April 29, 2014 motion for summary judgment on the ground that plaintiff has failed to exhaust administrative remedies. (ECF No. 56.)  Plaintiff has opposed the motion (ECF No. 59), and defendants have filed a reply. (ECF No. 61.)[1]  For the reasons set forth below, the undersigned will recommend that defendants'

---

[1] On March 27, 2014, the undersigned issued findings and a recommendation that defendants' Rule 12(b) motion to dismiss this action for failure to exhaust administrative remedies be granted. (ECF No. 52.)  On April 4, 2014, the undersigned vacated these findings and recommendation in light of Albino v. Baca, 747 F.3d 1162 (9th Cir. Apr. 3, 2014) (*en banc*), which held that a

1

motion be granted.

I. Exhaustion Requirement

Section 1997(e)(a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a) (also known as the Prison Litigation Reform Act ("PLRA")).  A prisoner must exhaust his administrative remedies before he commences suit. McKinney v. Carey, 311 F.3d 1198, 1199–1201 (9th Cir. 2002).  Failure to comply with the PLRA's exhaustion requirement is an affirmative defense that must be raised and proved by the defendant. Jones v. Bock, 549 U.S. 199, 216 (2007).  In the Ninth Circuit, a defendant may raise the issue of administrative exhaustion in either (1) a motion to dismiss pursuant to Rule 12(b)(6), in the rare event the failure to exhaust is clear on the face of the complaint, or (2) a motion for summary judgment. Albino v. Baca, 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*).

The State of California provides its prisoners and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a).  At the time of the events giving rise to the present action, California prisoners were required to proceed through four separate levels of appeal to exhaust the administrative appeal process: (1) an informal resolution; (2) first formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the CDCR. See 15 Cal. Code Regs. § 3084.1–3084. 9.  A final decision from the Director's level of review satisfies the exhaustion requirement under 42 U.S.C. § 1997e(a). See Lira v. Herrera, 427 F.3d 1164, 1166–67 (9th Cir. 2005).

/////

---

defendant may no longer raise a prisoner's failure to exhaust state remedies in an "unenumerated 12(b) motion." Id. at 1168.  By minute order, the undersigned dismissed defendants' Rule 12(b) motion without prejudice to renewal as a motion for summary judgment. (ECF No. 54.)  The instant motion followed.

1  An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion
requirement.  Woodford v. Ngo, 548 U.S. 81, 84 (2006).  When an inmate's administrative grievance is improperly rejected on procedural grounds, however, exhaustion may be excused as "effectively unavailable."  Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224–26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available).

II.  Facts

Plaintiff alleges that, at a June 16, 2010 meeting of the Institutional Classification Committee ("ICC") at CSP-Sacramento, defendant committee members Virga and Macomber recommended that plaintiff be transferred to High Desert State Prison ("HDSP"), even though plaintiff informed them that he had a medical chrono stating that a cold climate would exacerbate his knee problems.  (SAC at 10-12.[2])  Plaintiff alleges that he again protested the transfer decision to defendants at ICC meetings on September 8, 2010 and September 29, 2010.  (Id. at 10; see DUF 2.)

On October 20, 2010, plaintiff submitted a CDCR form 602 Inmate Health Care Appeal concerning the decision to transfer him to HDSP.  (SAC at 36-39; also attached at ECF 61-1 at 7-8.)  Specifically, plaintiff asserts that he put the appeal in an envelope, addressed it to the Appeals Coordinator, and an officer picked up that envelope "along with all other institutional mail [on the night of October 20, 2010] and mailed it."  (ECF No. 59 at 4.)

Plaintiff listed three dates in his appeal: June 16, 2010, when the ICC decided to transfer him; September 8, 2010, when plaintiff "again . . . informed" the ICC about his opposition to the transfer; and September 29, 2010, when plaintiff challenged the transfer "for the third time" before the ICC.  (SAC at 38-39.)  In 2010, the regulations governing inmate appeals provided that

---

[2] Record citations refer to page numbers assigned by the court's docketing system.

3

"[a]n appellant must submit the appeal within 15 working days of the event or decision being appealed, or of receiving an unacceptable lower level appeal decision." Cal. Code Regs tit. 15 § 3084.6(c) (attached at ECF No. 56-1 at 8-9).[3]

In a declaration submitted in support of summary judgment, CSP-Sacramento Appeals Coordinator R. Jibson states that this appeal was received on October 29, 2010. (ECF No. 56-1 at 5.) "Since the form was received more than fifteen days after the decision to transfer Watts had been made, this Appeal was screened as untimely and returned to inmate Watts on November 4, 2010." (Id.)

In opposition to summary judgment, plaintiff asserts that Jibson's declaration is "fabricated." (ECF No. 59 at 1.) He continues:

> All plaintiff (prisoner/inmate[)] can do is draft his inmate appeal in a timely manner (as he did on October 20, 2010), place it on his door to be mailed (and it was on that date). Defendants' 'appeals coordinators' common practice is to stifle and stagnate inmate appeal[s] to sabotage the exhaustion process. . . . [Jibson] regularly lies, and sends back perfectly drafted appeals with . . . notice to correct . . . [thereby] stagnating, and throwing away inmate appeals.

(Id. at 2.) Plaintiff attaches to his opposition a May 2014 declaration by inmate Rex Chappell stating that Chappell submitted a 602 appeal to Jibson and it was either never screened "or it was returned with some frivolous excuse for it not being processed." (Id. at 12.) Plaintiff submits similar declarations by two other inmates concerning their 2014 appeals. (Id. at 14-17.)

After plaintiff's appeal was returned to him on November 4, 2010, he asserts that he "sent his appeal back to the Appeals Office a second time showing it was not untimely (and they recognized it), but stated it really is too late now, so to speak. Plaintiff then wrote the Warden (Defendant Virga) who did nothing." (ECF No. 59 at 4.)

Plaintiff did not submit a 602 appeal of the decision to screen out his October 20, 2010 appeal. (DUF 7.)

/////

---

[3] On January 28, 2011, a new regulation went into effect, increasing the time for an inmate to file an administrative appeal to "30 calendar days" from the event or decision being appealed or an inmate's first knowledge of it. Cal. Code Regs., tit. 15 § 3084.8(b), attached at ECF 61-15. At the time of plaintiff's appeal, however, the 15-day limit was in effect.

III. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587.

In a summary judgment motion for failure to exhaust administrative remedies, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. The ultimate burden of proof remains with defendants, however. Id. "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id. at 1166.

IV. Analysis

The gravamen of this case is that defendants Virga and Macomber decided to transfer plaintiff to a cold-climate prison despite his medical need for a warm climate, thus showing deliberate indifference under the Eighth Amendment. (See ECF No. 33 at 3-4.) The transfer decision was made at a June 16, 2010 committee meeting, attended by plaintiff. On July 29,

1  2010, plaintiff wrote a letter to CDCR officials protesting the decision (see SAC at 27), and in
2  two subsequent ICC meetings in September 2010, he verbally protested the decision.

3        On October 1, 2010, a CDCR official answered plaintiff's letter, advising him to use the
4  inmate appeal process.  (SAC at 27.)[4]  On October 20, 2010, plaintiff drafted his first and only
5  602 appeal on this issue and placed it in an envelope outside his cell, where it was picked up that
6  night along with other institutional mail.

7        The Appeals Coordinator received this appeal on October 29, 2010, screened it out as
8  untimely because it was received more than fifteen days after the ICC's decision to transfer
9  plaintiff, and returned it to plaintiff on November 4, 2010.  While plaintiff asserts that he "sent
10  the appeal back" to the Appeals Coordinator, he supplies no evidence of this, and at any rate does
11  not claim to have formally appealed the November 4, 2010 determination within fifteen days "of
12  receiving an unacceptable lower level appeal decision" under Cal. Code Regs. tit. 15 § 3084.6(c).
13  Plaintiff made no further attempt to challenge either the transfer decision or the screening-out of
14  his October 20, 2010 appeal through the administrative grievance process.

15        On this record, the undersigned finds that defendants have met their initial burden to prove
16  "that there was an available administrative remedy, and that the prisoner did not exhaust that
17  available remedy."  Albino, 747 F.3d at 1172.  Thus the burden shifts to plaintiff "to come
18  forward *with evidence* showing that there is something in his particular case that made the
19  existing and generally available administrative remedies effectively unavailable to him."  Albino,
20  747 F.3d at 1172 (emphasis added).

21        First, plaintiff does not explain why he did not file an administrative appeal of the ICC's
22  June 16, 2010 transfer decision within fifteen working days, or offer any evidence that this
23  remedy was "effectively unavailable" to him.  See Woodford, 548 U.S. at 84.  Assuming the
24  decision date was either June 16, 2010 or September 8, 2010, plaintiff's appeal was appropriately
25  rejected as untimely.

---

[4] It is clear that plaintiff was previously aware of the inmate grievance system, as he asserts that defendants "took adverse action against Plaintiff for filing grievance (602s) and other lawsuits before this one, and he had a protected conduct for doing so[.]"  (SAC at 13.)

1  Assuming the "real" decision date was September 29, 2010, however, plaintiff's appeal
2  was submitted exactly fifteen working days after the decision. On this basis, an argument could
3  be made that Jibson's screen-out was erroneous. Plaintiff offers no reason why he did not
4  formally appeal the screen-out, making the case that his appeal was timely. Nor does he
5  satisfactorily explain why this option was "unavailable" to him.

6  Plaintiff's conclusory assertions that Jibson lied in his declaration, and that Appeals
7  Coordinators at CSP-Sac commonly "stifled" or "threw out" inmate appeals, do not create a
8  genuine dispute of fact as to whether administrative remedies were available in this instance. See
9  F.T.C. v. Publishing Clearing House, Inc., 104 F.3d 1168, 1172 (9th Cir. 1997) ("A conclusory,
10 self-serving affidavit, lacking details facts and any supporting evidence, is insufficient to create a
11 genuine issue of material fact.") The same goes for other inmates' similar statements about their
12 2014 appeals.

13 To summarize the record, it appears that plaintiff did not submit an administrative appeal
14 of the transfer decision until the last day on which such an appeal could conceivably be deemed
15 timely. Then, when the appeal was screened out as untimely (which it arguably was), plaintiff did
16 not formally appeal this decision or pursue his appeal further. Though he asserts he "sent it back"
17 to be reconsidered, he supplies no evidence of this and instead relies heavily on assertions that the
18 Appeals Coordinator squelched his appeal for no good reason. This does not suffice to create a
19 genuine dispute of fact as to whether administrative remedies were "effectively unavailable."

20 Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary
21 judgment (ECF No. 56) be granted.

22 These findings and recommendations are submitted to the United States District Judge
23 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days
24 after being served with these findings and recommendations, any party may file written
25 objections with the court and serve a copy on all parties. Such a document should be captioned
26 "Objections to Magistrate Judge's Findings and Recommendations." The parties are
27 ////
28 ////

7

1  advised that failure to file objections within the specified time may waive the right to appeal the

2  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  Dated:  October 30, 2014

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

10  2 / watt2688.sj